**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT**

| | |
|---|---|
| THOMAS W. MCENTEGART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 07 C 2006 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| SUNRISE TRANSPORTATION, INC. ) | |
| and ARTHUR JOHNSON, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

On June 5, 2006, plaintiff was in the cross-walk at the intersection of Congress Parkway and Financial Place in Chicago when he was hit by car that had been hit from behind by a bus operated by defendants. Plaintiff filed this suit to recover damages for the injuries he suffered in that accident. The case is before the Court on defendants' motions to bar Dr. John Ebersole from testifying and plaintiff from introducing evidence about changes in his personality after the accident and plaintiff's motions to bar Jerrold Runquist from testifying and Dr. John Hughes from testifying about plaintiff's alleged marijuana use. For the reasons set forth below, the Court denies defendants' motions and plaintiff's motion to bar Hughes' testimony and grants plaintiff's motion to bar the testimony of Jerrold Runquist.

**Defendants' Motion to Bar Dr. John Ebersole from Testifying**

Defendants argue that Ebersole's testimony should be barred because plaintiff did not submit a report from him that meets all of the requirements of Federal Rule of Civil Procedure ("Rule") 26(a)(2). There is no dispute that the report, which is not signed by Ebersole, does not wholly

comply with the Rule. But that noncompliance is a basis for barring Ebersole's testimony only if it prejudiced defendants. *See* Rule 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.")

Defendants have not shown that it did. Though they say the flawed report deprived them of "the benefit of [having] Dr. Ebersole's complete opinions prior to his deposition" (Defs.' Mot. Bar Testimony Ebersole at 4), they do not identify a single opinion about which Ebersole testified that was not set forth in the report. Because there is no evidence that defendants were actually prejudiced by it, plaintiff's failure to adhere strictly to Rule 26 is not a basis for barring Ebersole's testimony.

Defendants also argue that Ebersole's testimony should be barred under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Daubert* teaches that expert testimony is admissible under Federal Rule of Evidence 702 only if "the reasoning or methodology underlying [it] is scientifically valid" and it "will assist the trier of fact to understand or determine a fact in issue." *Id.* at 592-93. Defendants say Ebersole's opinions that plaintiff had a seizure on July 30, 2007 and has epilepsy are unfounded because they: (a) are based on other doctors' examinations of plaintiff; (b) differ from the conclusions of plaintiff's treating physician; and (c) are based on a distortion of the relevant scientific literature.

The Seventh Circuit rejected defendants' first two arguments in *Walker v. Soo Line Railroad Co.*:

> Medical professionals have long been expected to rely on the opinions of other medical professionals in forming their opinions. Federal Rule of Evidence 703, the

2

> rule governing the appropriate bases of expert testimony, specifically contemplates, in its advisory committee notes, reliance on reports and opinions from nurses, technicians and other doctors. Indeed, courts frequently have pointed to an expert's reliance on the reports of others as an indication that their testimony is reliable.
>
> . . . That two different experts reach opposing conclusions from the same information does not render their opinions inadmissible.

208 F.2d 581, 588 (7th Cir. 2000) (quotation, citations and footnote omitted). Thus, the fact that Ebersole relied on other doctors' data but drew different conclusions from it does not make his testimony inadmissible.

Defendants' last argument is no more persuasive. First, Ebersole did not, as defendants say, opine that plaintiff has a "a 63% possibility . . . [of] develop[ing] epilepsy." (Defs.' Mot. Bar Ebersole at 9-10.) Rather, he said one study put plaintiff's risk at that level, but he thought "in general, [that plaintiff] probably has a four to ten fold greater risk than normal individuals, maybe as much as 15 fold." (Defs.' Mot. Bar Ebersole, Ex. C, Ebersole Dep. at 91-92, 99-106.) Moreover, Ebersole acknowledged that other studies suggest the risk is much smaller. (*Id.* at 113-19.) But he said those studies had limited relevance because they pertained to patients whose only injury was a subarachnoid hemorrhage, which was, in Ebersole's view, the "least significant" of plaintiff's injuries. (*Id.*) In short, the record does not show that Ebersole's opinions have no support in the scientific literature and any divergence between that literature and his opinions can be explored on cross-examination. Defendants' motion to bar his testimony is, therefore, denied.

**Defendants' Motion to Bar Evidence about Post-Accident Personality Changes**

Defendants ask the Court to bar plaintiff from introducing evidence about personality changes he says the accident caused because he did not timely produce evidence relating to that

3

claim. Specifically, defendants say plaintiff did not produce a "First Warning" he received from his employer, the Chicago Board of Options Exchange ("CBOE"), in April 2005 for emotional outbursts he had at work on March 14, 2005 and on two occasions in 2004. (*See* Defs.' Reply Supp. Mot. Bar Reference Trial Personality Change, Ex. B, Mem. from Johnson & Beck to McEntegart of 4/6/05.) Defendants say they first saw that document in July 2008, two months after fact discovery closed, when CBOE produced it. Because they could not explore the pre-accident behavior issues raised by that document, defendants say plaintiff should be barred from offering evidence about the personality changes he allegedly suffered.

Barring the use of evidence wrongfully withheld is among the sanctions available for a violation of the discovery rules. But a sanction will be imposed only if defendants show that a violation actually occurred, *i.e.*, (1) plaintiff had a copy of the first warning document; (2) it was responsive to one of defendants' discovery requests or plaintiff was otherwise obligated to produce it; and (3) plaintiff failed to produce it. Defendants have not established either of the first two elements. Consequently, the Court has no basis for granting their motion to bar.

**Plaintiff's Motion to Bar the Testimony of Jerrold Runquist**

At the time of the accident, plaintiff was employed by CBOE as a Trading Floor Liaison ("TFL"). TFLs are "middlem[e]n between [CBOE's] regulatory department and . . . [its] members," who use CBOE's rules and regulations to resolve disputes that arise on the trading floor. (Pl.'s Mot. Bar Testimony Runquist, Ex. B, McEntegart Dep. at 14.) Defendants say Runquist is an expert on CBOE's operations, including the skills required to be a TFL, the demands of that job and the

4

performance criteria by which TFLs are judged. Plaintiff says Runquist's proffered testimony does not comport with *Daubert*.

The Court agrees. Though Runquist has a wealth of knowledge about CBOE, the physical and mental demands of the TFL position and the performance criteria applied to them are not among his areas of expertise. Runquist never worked as a TFL, supervised a TFL or completed a performance review for one. (*Id.* at 70, 117-18.) Runquist worked in the regulatory department for only two of his seventeen years with CBOE, and even then, he spent less than ten percent of his time on the trading floor. (Mot. Bar Testimony Runquist, Ex. D, Runquist Dep. at 59-61, 70.) The vast majority of Runquist's time with CBOE was spent as a trainer. (*Id.* at 42.) And, though TFLs were among those he trained, that training was limited to a narrow aspect of their job: interpreting the data generated by CBOE's computer systems. (*Id.* at 42, 161-62.)

Despite his apparent lack of first-hand knowledge, Runquist says he is an expert about the TFL position because:

> I worked with [TFLs] either directly or indirectly. I knew all of them, sat with them, smoked with them, ate lunch with them, attended meetings with them, trained them, explained to visitors and people within the regulation department what they did.

(*Id.* at 87.) That kind of, essentially social, interaction with TFLs does not make Runquist an expert on their job duties, demands and performance criteria. Plaintiff's motion to bar Runquist's testimony is, therefore, granted.

**Plaintiff's Motion to Bar Dr. Hughes from Testifying About Marijuana Use**

Tests done immediately after the accident showed that tetrahydrocannabinol, the main active chemical in marijuana, was present in plaintiff's blood. Among the opinions defendants' medical

5

expert, Dr. John Hughes, set forth in his report is that "[p]laintiff's positive marijuana test would possibly play a role in his general alertness in June 2006." (Mot. Bar Hughes' Testimony, Ex. B, Hughes Report.)  Plaintiff says that opinion exceeds Hughes' scope of expertise.

The Court disagrees.  Hughes' expertise in neurology is a sufficient basis for him to opine, generally, on how marijuana affects the brain. (*See id.*, Ex. D, Hughes Curriculum Vitae.)  The probative value of that kind of generalized testimony is not likely to be great.  But, whatever its worth, Hughes is qualified to give it.

## Conclusion

For the reasons set forth above, the Court denies defendants' motions to bar Dr. John Ebersole from testifying and plaintiff from introducing evidence about post-accident personality changes and plaintiff's motion to bar Dr. John Hughes from testifying about plaintiff's alleged marijuana use [doc. nos. 32, 44 & 45] and grants plaintiff's motion to bar Jerrold Runquist from testifying [doc. no. 43].

**SO ORDERED.**  **ENTER:**

**January 6, 2009**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**